**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Cr. No. 08-360 (RCL)** |
| | : | **Cr. No. 14-107 (RCL) (Joined)** |
| **v.** | : | |
| | : | |
| **PAUL ALVIN SLOUGH,** | : | |
| **EVAN SHAWN LIBERTY,** | : | |
| **DUSTIN LAURENT HEARD, and** | : | |
| **NICOLAS ABRAM SLATTEN,** | : | |
| | : | |
| **Defendants.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE EXPERT TESTIMONY OF GOVERNMENT EXPERT ROBERT F. MOTHERSHEAD**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully requests that this Court deny the Defendants' late-filed Motion to Exclude the Expert Testimony of Government Expert Robert F. Mothershead filed by defendants Slough, Liberty and Heard. The government has met its burden of showing admissibility under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm, Inc.*, 509 U.S. 579 (1993). The reasons that support this Opposition are set forth below.

## I. Factual Background

On September 16, 2007, the four defendants and fifteen other Blackwater security contractors were assigned to a convoy of four heavily-armored trucks known as a Tactical Support Team, using the call sign "Raven 23." Shortly before noon, Raven 23 learned that a vehicle-borne improvised explosive device ("VBIED") -- or car bomb -- had detonated in central Baghdad near a location where a U.S. official was being escorted by a Blackwater personal

security detail team. Raven 23 team members promptly reported to their convoy vehicles, and the convoy drove to a secured checkpoint between the Green Zone and Red Zone. Once there, in disregard of an order from Blackwater's command, Raven 23 left the Green Zone and established a blockade in Nisur Square, which was nearby the Green Zone. At the time, defendant Heard was in the fourth convoy vehicle in the line (*i.e.*, the "Follow Vehicle") as the rear turret gunner. Jeremy Ridgeway, who has pled guilty in this case, was the front turret gunner in the Follow Vehicle.

While occupying Nisur Square, seven of the nineteen members of Raven 23, including the four defendants and Ridgeway, fired their weapons at targets primarily to the south, but also to the west and east, of the circle, resulting in the deaths or injury of multiple unarmed Iraqi civilians there. At one point during this incident, a pen flare caught Ridgeway's attention. As recounted by Ridgeway, he observed a pen flare bouncing back and forth between himself and Heard on the top of their vehicle. To Ridgeway, it looked like a pen flare, it smelled like a pen flare and it sounded like a pen flare. Ridgeway added that Heard -- whose nickname was "Extreme" for his penchant for carrying more gear than was required on a mission -- had a habit of attaching a pen flare to a retractable ID cardholder. This practice was not advisable, as the dangling pen flare could easily and accidentally go off. Heard, however, pointed to a hole in his fire retardant Nomex suit, asked Ridgeway whether he saw the richochet off of the vehicle, and attributed it to an incoming tracer round. The government does not expect any Raven 23 witness to testify at trial about incoming tracer rounds.

Given these facts, the government asked FBI forensic chemist Robert F. Mothershead II to perform certain tests. On May 1, 2014, the government sent a letter to the defense providing the following expert disclosure:

> Mr. Robert Mothershead is an expert in Forensic Chemistry. His qualifications are described in his Curriculum Vitae, identified by Bates No. BWTT_007367-007371. He will testify to the findings and conclusions reduced to writing in the FBI lab reports bearing his name, as well as the bench notes on the DVD labeled "Expert Materials-Bates 005263-009734." Specifically, Bates 007372-007476 pertain to Mr. Mothershead. Among other things, Mr. Mothershead analyzed the chemical residue deposited on the burned clothing and glove of defendant Dustin Heard and conducted a comparison of that residue to the explosive charges used in a MK110 Mod 1 green signal flare, commonly known as a "pen flare."

In his Report of Examination (Attachment A), Mr. Mothershead noted that among other elements, magnesium and barium were identified within particles present on specimen Q252 [defendant Heard's glove]. These elements, among others, also were present as part of the "illuminant and low explosives compositions" within a pen flare.

## II. <u>Legal Background</u>

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony at trial. Rule 702 provides that an appropriately qualified witness may testify in the form of an opinion if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Rule 702 further requires that the testimony be: (1) based on sufficient facts or data, (2) the product of reliable principles and methods, <u>and</u> (3) that the proposed expert reliably applied the principles and methods to the facts of the case. *Id*; *see also Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1995). The party proposing the expert testimony bears the burden of showing that

the testimony satisfies Rule 702, and is therefore admissible. *See Meister v. Med. Eng'g Corp.*, 267 F.3d 1123, 1127, 347 U.S. App. D.C. 361 (D.C. Cir. 2001) (proponent of expert testimony bears the burden of showing its admissibility).

In determining the admissibility of expert testimony the Court must initially determine whether the proffered expert is qualified to offer an opinion on the pertinent issues of the case. *Ralston v. Smith & Nephew Richards Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). A qualified expert possesses the necessary knowledge, skill, experience, training, or education relevant to the facts at issue. Id. The Court, serving as the "gatekeeper," must then conduct a two-pronged inquiry as to the reliability and relevance of the proffered testimony. *Bitler v. A .O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004).

To be reliable under *Daubert*, an expert's scientific testimony must be based on scientific knowledge, which "implies a grounding in the methods and procedures of science" based on actual knowledge, not "subjective belief or unsupported speculation." 509 U.S. at 590. To assist in the assessment of reliability, the Supreme Court has listed four nonexclusive factors that the trial court may consider: (1) whether the opinion at issue is susceptible to testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community. *Daubert*, 509 U.S. at 593-94.

The Rule 702 inquiry, however, "is a flexible one," *Daubert*, 509 U.S. at 594 and "embodies a liberal standard of admissibility for expert opinions." *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir.2005); *accord Alfa Corp. v. OAO Alfa Bank*, 475 F.Supp.2d 357, 360

(S.D.N.Y.2007) ("'[T]he rejection of expert testimony is the exception rather than the rule.'" (quoting Fed. R. Evid. 702 advisory committee's note)). Moreover, although the defendants' have not specifically asked for a *Daubert* hearing, it is nonetheless within the Court's discretion to determine whether a hearing is necessary. *See Goebel v. Denver & Rio Grande W.R.R.*, 215 F.3d 1083, 1087 (10th Cir. 2000).

**III. <u>Mr. Mothershead's Experience and Testimony Meet the Test for Admissibility</u>**

The defense does not challenge the qualifications of Mr. Mothershead as an expert forensic chemist. His qualifications are beyond question. *See* Mothershead CV, Attachment B. Mr. Mothershead has been with the FBI Laboratory since 1996. He has testified as an expert in forensic chemistry approximately 20 times, most recently last year, in both state and federal courts. Rather, the defense focuses its efforts to preclude Mr. Mothershead from testifying on the argument that "his expert testimony provides no probative information." Defense Motion at 6. This argument is meritless.

The defense team will no doubt paint self-defense as a centerpiece issue at trial. Ridgeway's observations regarding an ignited pen flare which appeared to be "bouncing back and forth" between Ridgeway and Heard will be attacked vigorously by the defense. It is strong inculpatory evidence. It suggests that Heard, even at that stage, sought to excuse his unjustified shooting at Iraqi civilians through a false exculpatory statement. It is also strong corroborative evidence of Ridgeway, whose credibility the defense will attempt to make another key issue at trial.

Mr. Mothershead's examination consisted of: 1) examining an unexploded pen flare; 2)

igniting a pen flare near a pair of jeans, then chemically comparing them to defendant Heard's damaged clothing. Among other things, Mr. Mothershead identified the elements magnesium and barium as both within the pen flare and in burn residue on the jeans. At trial, he will explain that finding this combination suggested an explosive or pyrotechnic source. Magnesium gives off white light when used in pyrotechnics, for bright effect. Barium gives off a green color, like one might find in fireworks or a signal flare. Barium, in particular, is not something routinely found in soil samples, or everyday products. The bottom line is that Mr. Mothershead's analysis will reveal that certain elements found on Heard's burned glove are consistent with having come from a pen flare. As the defense points out, Mr. Mothershead confined his comparison to a pen flare. We anticipate that the defense will cross examine Mr. Mothershead vigorously, to include the fact that he did not perform laboratory comparisons of other explosive devices, and cannot opine that such devices were not the cause of the burns on Mr. Heard's glove. The defenses' attacks on Mr. Mothershead's testimony, however, go to weight of the evidence, rather than to admissibility. *See McReynolds v. Sodexho Marriott Services, Inc.*, 349 F. Supp. 2d 30, 40 (D.D.C. 2004) (citing *Murphy v. General Elec. Co.*, 245 F.Supp.2d 459, 467 n. 4 (N.D.N.Y.2003) (in a disparate treatment claim, failure to perform a multiple regression analysis is not a basis for Daubert exclusion of evidence, but instead goes to the weight of the evidence)); *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir.1996) (Expert testimony should be excluded where it is "speculative or conjectural," but arguments that the expert's assumptions "are unfounded go to the weight, not the admissibility, of the testimony") (internal quotation marks omitted)*; United States v. Chischilly*, 30 F.3d 1144, 1153-54 (9th Cir. 1994) ("potential faults in the DNA sample extraction process . . . go to the weight to be accorded to the evidence

not its admissibility”); *Burke v. Transam Trucking, Inc.*, 617 F. Supp.2d 327, 335 (M.D. PA 2009) (concluding that many of defendants’ arguments and criticisms of the proposed experts methodology went more to the weight of the evidence rather than to his ability to testify as an expert). Weight of the evidence could be attacked on cross examination or by other expert testimony. *See Daubert, 509 U.S. at 596* (noting that vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking admissible evidence); *Ortiz v. City of Chicago*, 656 F.3d 523, 536 (7th Cir.2011) (“[t]he admissibility determination [under Rule 702] is not intended to supplant the adversarial process”).

WHEREFORE, the Government respectfully asks the Court to deny defendants’ motion and permit the expert testimony of Mr. Mothershead.

Respectfully submitted,

RONALD C. MACHEN JR.
UNITED STATES ATTORNEY
D.C. Bar Number 447889

By: /s/
Anthony Asuncion
Assistant United States Attorney
D.C. Bar Number 420822
United States Attorney’s Office
555 4th Street, N.W.
Washington, D.C. 20530
Anthony.Asuncion@usdoj.gov

/s/
T. Patrick Martin
Assistant United States Attorney
D.C. Bar Number 471965
Thomas.Martin@usdoj.gov

/s/
Christopher Kavanaugh
Assistant United States Attorney
VA Bar Number 73093
Christopher.Kavanaugh@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of May, 2014, a copy of the foregoing was served on counsel of record for the defendant via the Court's Electronic Case Filing system.

/s/
Anthony Asuncion
Assistant United States Attorney